Good morning. Illinois Appellate Court, 1st District Court is now in session. The 4th Division, the Honorable Justice Bertina Lampkin presiding, case number 21-1224, Tanja Cretella v. Azcon, Inc. Good morning, everyone. I am Judge Bertina Lampkin. In terms of the oral argument today, we're going to give both sides 15 minutes. The appellant, if you'd like to let me know how much time you want to reserve for rebuttal. I'd ask that each party introduce themselves and who they are representing. Good morning, everyone. My name is Dean Karas, C-A-R-A-S. I am counsel for the plaintiff appellant Tanja Cretella. Could everyone hear me okay? Very clearly, thank you. Thank you, Justice. And how much time do you want to reserve, sir, for rebuttal? If it's okay, 10 and 5. That's fine. And of course, if we allow you to go over or we ask questions and you go over for the other side, we'll give them additional time too. And counsel, if you could identify yourself. Yes, good morning. It's Brian O'Neill for defendant appellee ASCON Inc. All right, thank you. All right, Mr. Karas, you can begin. Thank you very much. May it please the court. My client, Tanja Cretella, was terminated, fired from her employment at ASCON after refusing to consent to a company-owned life insurance policy that would value her life at millions of dollars with her employer being the beneficiary of the policy. However, under the Illinois insurance code, specifically section 224.1, the employer insurable interest statute, that was prohibited because the statute explicitly prohibits employers from retaliatory discharging employees for refusing consent to such policies. Briefly, the law in the state of Illinois is basically or was basically before this employer insurable interest statute came along was that one person couldn't insure the life of another without having an interest in that person's life. And that was the public policy, and it's still the public policy today. However, back in the early 1990s, the Illinois legislature decided that it would be in the best interest of employees to allow employers to insure their lives for the employee's benefit to fund welfare benefit plans. Specifically, Senator Collerton said, the goal of this bill is to help the insured, and the insured is the employee. Clearly, the employee is... Wait, wait, wait one second. Hold on. Do you mean to tell me you're arguing that insuring the life of the employee by an employer is for the benefit of the employee? That is what the statute... How does that work? If the employer insures the life of the employee, life insurance, and the employee dies, the employer gets the money. What does the employee get other than a coffin? They... Justice, that's a fabulous point. They only get a coffin. And that is why the legislature made it clear that before you could do this, you had to get the consent... No, no. I understand what the legislation said. I'm only attacking your argument that the insuring of a life of the employee by the employer is for the benefit of the employee. That makes no sense at all. I don't care what... We get to do constitutional, not what doesn't make any sense that they do. But the fact of the matter is, it just simply doesn't make any sense. Now, there is a prohibition included within that statute that you're talking about of retaliating against an employee who will not give their consent. Now, that may very well be for the benefit of the employee so that they cannot be disciplined or discharged if they refuse to allow the employer to insure their life. But... Well, go ahead. Go ahead. That is an excellent point. If you look at the statute, the insurance was supposed to provide money for the employee's welfare benefit plans. And in that respect, the goal of this statute was to benefit the employees. And that's in the statute. But in this case, this company sought to have my client sign up insurance policy on her life for up to 30 times her salary, or up to $30 million that they would have tax-free deducted those premiums that they paid. And if she died, even after she left the company, they would have gotten that money tax-free. What the motives were of the defendant to ask to have this insurance approved by the employee is really irrelevant. The question is, is there a right of action against this employer for violating the statute by firing her for refusing to consent to the issuance of the policy? That's the issue. We don't care what their motive was. It doesn't make any difference what their motive was in asking for the insurance. We do care what their motive was for firing. And I agree with you. The reason, and maybe it's irrelevant, that she wouldn't consent was that the policy that they wanted her to sign was so that the money could go to other capital needs of the company. And that's not what the statute did not want to do. She has a right to refuse for any reason she wants to refuse. They need her consent. Is there anything in the statute that says she can't withhold her consent for any specific reason? She can refuse for any reason. And she did. But the statute specifically says they shall not retaliate in any manner against her. Now we're getting to the point. And in this case, she was retaliated against. She was told on the fifth of the month, if everybody else in this company has signed this thing, if you don't sign this, you will be fired. She said that you're not allowed to retaliate against me for that. The employer said, we don't care. And sure enough, on June the 7th, they fired her. Okay. You raised causes of action under two counts, one retaliatory discharge and one under the statute. Let's talk about the retaliatory discharge. Do you think that the statute itself is what could be termed clearly mandated public policy? Or is it merely the public policy of the state? It's clearly mandated public policy. Okay. All right, Councilor, I do have a question. Because we are an at-will state, and you can fire an employee for any reason or no reason at all. This is a hypothesis. If there is not clear mandated public policy that would allow a cause of action to go forward on retaliatory discharge, I want your best argument for an implied right of action under 224.1. Okay. It's an implied right because the purpose of the statute was to benefit the employees. That's clear. Secondly, she was a member of the class the statute sought to protect. She is the employee insured, specifically named as the employee insured in the statute. The injury the statute was designed to prevent is clearly enumerated. Any employer shall not retaliate in any manner against an employee, a retired employee for refusing consent to be insured. And that's what happened here. And lastly, there is absolutely no adequate remedy at law for her or if you affirm for any employee in the state of Illinois that this happens to because the only remedy that we could find anywhere for a violation was a fine that goes to the states. Doesn't get her job back. Doesn't get her health insurance back. Doesn't get her benefits back. She's fired and she's on the street for refusing consent to be insured. And if this is affirmed, every employer in the state of Illinois is going to take out these gambling life insurance policies on their employees and they're going to tell their employees, if you don't consent to this, we're going to fire you. Well, let me ask you a question. Let me ask you a question. If there is an adequate remedy at law, then no implied right of action under the statute need be a retaliatory discharge action or is there an implied right of action under the statute? Both. Both. Well, if there's a retaliatory discharge action, then there's an adequate remedy at law. You don't need an implied right of action under the statute. And that's what I'm arguing. So you're arguing against implied right of action, but I'm arguing it's one or the other. Well, exactly right. But which one is it? It's an implied right of action case because there's no adequate remedy for her. Okay. Justice Lampkin, did I finish answering your question? I think you did. You went through the four factors for the implied right. I'll be interested to hear Mr. O'Neill's response to those four factors. Is my 10 minutes up? Actually, it is. But you can certainly sum up if you'd like to. No. Did Justice Rockford have any questions? She said. Thank you very much, everyone. On behalf of my client, I really appreciate your time this morning. Thank you, counsel. Mr. O'Neill. Good morning, justices. May it please the court. I don't want to get into evidence and potential defenses and arguments of that nature because as the justices are well aware, this is brought on a motion to dismiss, the granting of a motion to dismiss. And as has been pointed out already, the issue is whether there is an actionable claim based on the allegations taken as true, either under common law, wrongful discharge, count three, and count one, where there's a contention of an implied private right of action under the Illinois insurance code. Counsel and plaintiff have not taken up count two, the Illinois whistleblower act claim. And as has also been pointed out, Illinois is an at-will state like other states. So in general, there is no claim for discharge. It would have to fit under the very narrow exception to common law for wrongful discharge or a statutory claim. And plaintiff cannot meet either here. And I do want to get into first count one and the elements. There's four elements, as this court is aware, that would need to be met for implying a private right of action. The Supreme Court and appellate courts have indicated, just like there's a hesitancy to expand the common law exception to at-will employment, there's a similar hesitancy to expand statutory claims where there is not expressed authority for a private right of action. And critical on the implied private right of action analysis is the courts have consistently indicated you have to look at the code or act as a whole in determining whether plaintiff can meet all those factors. And here we're dealing with, of course, the Illinois insurance code. And you can't say that the code interpreted as a whole is designed to protect employees. The code is laid out by the cases, is designed towards regulating insurers and protecting public and insured from unscrupulous practices. The code is not designed for protecting employees. You just used a word that was caught my attention. You said it's designed to protect insureds. Isn't the employee an insured? Well, no. So first of all, the claim here is not about an insured. This employee never became an insured. There's no allegation that a policy was ever taken out on the individual. And in fact, the whole premise of the claim is she was allegedly refused for consent for allegedly discharged for so. But beyond that, this is not a claim focused on an actual insured under an insurance policy. This is a claim focused on an employee trying to bring a retaliatory discharge action. And tell us, Mr. O'Neill, what do you consider the remedy as against a employer that violates the statute and discharges an employee for failure to consent? What's the remedy? Sure. So that goes to element four. And where the courts have indicated that where here you have a broad enforcement scheme, as is the case with the Illinois Insurance Code, that enforcement powers, broad enforcement powers are provided to the director of insurance, um, that cuts against implying a private right of action because you have this whole detailed thought out mechanism for enforcing any violations. And this includes the ability to create regulations for enforcement. It includes investigations for violations, subpoenas and examination of witnesses, hearings, potential actions by the director of insurance to enforce the code, civil penalties. So, you know, plaintiff is focused in their briefs at the at this level and the trial court level about we I should be able to get monetary damages, adequate compensation for allegedly being wrongfully fired. But the courts have been clear that that is not proper in terms of the analysis for element four implied private right of action analysis. It's not about whether the plaintiff can recover monetary damages. Again, there's a detailed enforcement mechanism in place. And critical here, as other courts have noticed, noted that not only when you have that detailed enforcement mechanism, if you have a situation like here, where the legislature has actually created express private right of actions in other sections, including with respect to being able to bring claims against insurers if they improperly release private information, then it again cuts against an argument that you should imply a private right of action in another section that the legislature knew how to expressly provide private right of action in certain sections that would cut it out of the general administrative enforcement scheme set up by the Illinois Insurance Code, but they did not do so with respect to section 224.1. Can I go back a little bit? Sure. The statute itself uses the word insurer to refer to who the plaintiff is. And it says that they need the consent of the insured. And that'll be satisfied, the consent of the insured will be satisfied if there's no objection within 30 days of receipt. So it seems to me this plaintiff, by that language, is considered an insurer for purposes of this statutory provision. Okay, so to respond to that question, I would say, first of all, this again is an employee-employer dispute, and that's what was disputed at the trial court level. There was never any allegation in the pleadings or in the trial court briefings that Ms. Cortella, the plaintiff, became an insured. And under even that statute, she never became an insured. There is no allegation, there has not, cannot be, that any policy for any amount was ever taken out on her. And we do point out in the briefs that there's regulations that actually reflect with respect to life insurance, that the regulation indicates that the insured and their life insurance policy is really the individual or entity that is going to become the beneficiary of the policy. In this case, as the legislative authority reflects that plaintiffs put in the record, legislature was clear that the corporate-owned life insurance policy setup is that the corporation whatsoever, that the corporation is the beneficiary and not any employee or their family. You also mentioned that the code had the purpose of preventing unscrupulous practices. So would this not be fall within an unscrupulous practice? Well, again, that would be an unscrupulous practice of insurers. The whole code, as laid out by Price in the Supreme Court, it's designed to regulate insurance companies. It's not designed to regulate employers. And I do want to make the point that similar to Fisher and Mesker, look, Fisher and Mesker had similar anti-retaliation language. In certain circumstances, employers cannot retaliate against employees. And there's admittedly anti-retaliation language similar in Section 224 of the Illinois Insurance Code. But what those cases said is similar here that those acts, they're not designed to protect employees. And very similar to this case, those were employer-employee discharge disputes. So I think those cases are right on point that when looking at the codes as a whole, like with the Nursing Home Care Act, with respect to a focus on protecting residents and employees, and the personnel code focused on insuring competent employees and protecting citizens at large, there's not a focus when you look at the code as a whole on protecting employees. And that is exactly what we have in this matter. Well, let me ask you a question. The particular section that we're looking at, the prohibition against retaliation for refusal to consent, whose benefit is that for? The employer? Sorry, for whose benefit is... The section that prohibits retaliation, refusal to consent, whose benefit is that for? Well, if you're isolating one sentence, the section about anti-retaliation, which I think is your question, that would be a sentence designed for protection of the employees, not the employer. Yeah, then I have another question. Okay, but go ahead. In terms of, because I'm just on the same page now. It says you have to get the employee's consent. To whose benefit is that? You have to get their consent and you can't retaliate. It's two separate things. For whose benefit were those items placed in that legislation? Well, I think the... So first of all, section 22, 4.1, it's titled employer insurable interest. So it's laying out that sentence, the last one you just mentioned, it's laying out that employers do have an insurable interest on the lives of their employees, despite anything potentially the contrary within other parts of the code. And they may get that insurance with the consent of the employee. I don't read that sentence in any way as for the protection of employees. That is about clarifying that employers do have an insurable interest. So they can get corporate owned life How about fairness to the employee? You can employ my life, but you have to get my consent and you can't fire me. Isn't this... I mean, it's protecting or giving the employer rights, but it's also giving the employee fairness. Okay. So if we're getting into... What I'm talking about is an implied right of action for the employee when you don't get the employee's consent and you retaliate by firing. And what other way can they be made whole or challenge this without an implied right of action? So again, that's why I really want to focus back on the factors and how they've been interpreted and the court's very clearly saying implied private right of action is not about whether the employee can be made whole. That's not relevant to the analysis. If that was relevant to the analysis, you'd have a situation where again, Fisher, Mesker, any case where you had a coder act that had any kind of anti-retaliation provision read in isolation, then you would imply private right of action. But the courts have said that that is absolutely not the way we're doing it. That would open up a major door as an exception to that employment doctrine. You have to look at the code or act as a whole in making the implied right of action determination rather than a sentence in a section in isolation, for example. Well, assuming you're correct, that there is no private right of action. Now, tell me why there isn't the Common Law Retaliatory Discharge Act? Sure. Thank you, Justice Gess. The prohibition against fire is in Scotsman's statute. And a statute is the public policy of the state, according to the Supreme Court, public policy of the states, found in its constitution and statute. It's in the statute. And so if there is no private right of action, why wouldn't the violation of the statute constitute a common law retaliatory discharge? Thank you for the question. And yes, so as to pound three, the common law wrongful discharge, the answer is that that is by design and reiterated by the courts over many years. It's a very narrow exceptions that will doctrine, which, as Justice Lampkin put it out, is you can generally fire for any reason or no reason to establish a common law wrongful discharge claim. The courts have indicated to get into that narrow exception, you need to really fit into one of two categories or comp retaliation. We obviously don't have that here or whistleblowing activities. And we don't have that here either. Those really they're not in dispute at all. So you don't have one of the two recognizable categories. If you're going beyond that into clear mandate of public policy, that that's it's fairly nuanced. But what the courts have said is you don't get there just by having anti retaliation language. You know, if there was whistleblowing activity, that that went to, for example, unsafe conditions that would impact society at large, that could potentially be a clear mandate of public policy. But we're here like is in price, you have a situation. And while in price, it was individual trying to bring common law wrongful discharge claim for claiming that they were fired for filing a health insurance claim by their employer, the court said that that doesn't trigger the high bar of a clear mandate of public policy under Illinois law, because they're like here, what you had is a private grievance dispute between employer and employees or any statute in the state of Illinois, that prohibits discharge for filing a health insurance claim that they actually argued that under the Illinois insurance code, that interpreting that. But I guess to your point, I would say that there has been cases, I believe we cited one of them that like with the Illinois Wage Payment Collection Act, for example, they do have specific anti retaliation language, but the court said, that's not enough to establish common law wrongful discharge claim. It's it's in the nature of a private employer employee dispute that doesn't impact society at large. So if if she doesn't have, under your argument, a common law retaliatory discharge action, then she has no adequate remedy at law. So why wouldn't we imply a private right of action under those circumstances? Well, because the standard is not that employees, if they feel wronged, should have an adequate remedy to be wholly compensated. In general, for for most any and all discharges, that whether you think it's unfair or not, there is not a remedy to be made whole. And again, when you go to imply private private right of action analysis, the Supreme Court has been clear, you it's improper to focus on, can the plaintiff be made whole and receive monetary damages? Here, of course, is indicated, where you have this detailed mechanism for enforcing and director of insurance is determining that, you know, that is adequate for deterring violations of any kind of the code. I don't think it's proper to step in and almost act like the legislature and say, well, but we think there should be more for the individual and they should be able to somehow be made whole. But again, that's that's not the standard. I'm sorry, am I out of time? You are, but it's interesting. So we haven't stopped you. Council, if there's nothing else that you'd like to say, Justice Hoffman or Justice Rochford, do you have any additional questions? Okay, thank you. Thank you, Council. Mr. Karras, you can thank you for your time. You're welcome. Thank you, everyone. Just just briefly. The code's purpose is to prevent unscrupulous practices. And in this case, the statute is the public policy of the state of Illinois. And the purpose of this code is to protect the public. And Justice Rochford, that's part of your opinion, Walsh versus Illinois Department of Insurance. This woman, this employee who clearly under the code was benefited because her consent was for failing to consent to a policy that would have ensured her life for 30 times her salary. It would have gone on even after she left. The company, pursuant to the terms of the company, could have even increased the value of the policy after she left, providing a windfall to the company to use the money for capital needs of the company, not for employee welfare benefit plans. This was an unscrupulous practice. Firing her was unscrupulous. And I respect and respectfully on behalf of my client, I would ask that the trial court order be reversed and send us back to determine what happened here. Otherwise, unfortunately, all employers, all you need to have is one employee are going to take these exorbitant life insurance policies to all of their employees and say, sign this, you're fired. And there's not going to be anything that anyone can do about it. Thank you very much. Thank you, Justice Hoffman or Justice Rochford. Anything additional? All right. Thank you both. This is an interesting case. And you will shortly have a decision on it. We're going to stand in recess at this time.